**PJM 10 CV 0331**

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

~~FILED~~
~~LOGGED~~ ~~ENTERED~~
~~RECEIVED~~

ROBERT J. ENGLAND, )
Individually, and on behalf of all others )
similarly situated, )
)
Plaintiff, )
)
v. )
)
MARRIOTT INTERNATIONAL, INC., et. al. )
)
Defendants. )
_____ )

$FEB - 9\ 2010$

CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

Civil Action No.: 316395-V

## RENEWED MOTION TO VOLUNTARILY DISMISS
## WITHOUT PREJUDICE

Plaintiff Robert J. England respectfully requests that the Court dismiss his class action

complaint without prejudice pursuant to Md. Rules 2-231(h) and 2-506(b).

1.    Plaintiff filed a Motion to Dismiss Without Prejudice on January 19, 2010, which

this Court denied, with leave to refile, during the parties' scheduling conference on January 22,

2010. Plaintiff files this Motion pursuant to the leave granted by the Court..

2.    Plaintiff filed his First Amended Complaint that included, for the first time, class

action allegations on September 4, 2009.

3.    Defendants answered on October 16, 2009.

4.    The parties held an initial scheduling conference before this Court on November

12, 2009, during which the parties agreed that they would jointly move to reassign the case to

Track VI, that Plaintiff would file a Second Amended Complaint on January 11, 2010, and that

the parties would present a discovery plan to the Court during the next scheduling conference on

January 22, 2010.

1

5. The Court subsequently granted a consent motion extending the date on which Plaintiff was to file his Second Amended Complaint to January 19, 2010.

6. During the course of their ongoing investigation and communication with class members for purposes of amending Plaintiff's Complaint, Plaintiff's counsel discovered new information which raised the question of whether this Court was the proper forum to bring Plaintiff's and class members' claims.

7. Specifically, Plaintiff's counsel learned that the Plan under which the Deferred Stock Bonus Certificates that are the subject of this litigation were issued may be governed by the Employee Retirement Income Security Act of 1974 (ERISA), and that some of Plaintiff's and class members' claims arise under ERISA provisions that grant the federal courts exclusive jurisdiction.

8. In light of this information, Plaintiff has filed a class action complaint in the United States District Court for the District of Columbia alleging violations of ERISA that fall within exclusively federal jurisdiction. The defendants in that complaint are Marriott International, Inc., and the employee benefit plan that is liable to Plaintiff and class members under their Deferred Stock Bonus Certificates. Defendants Host Hotels & Resorts, Inc. and Host Hotels & Resorts, L.P. are not named as defendants in the federal lawsuit.

9. Given that there is now pending a lawsuit by the same Plaintiff on behalf of the same putative class, alleging substantially the same facts, and also pleading additional exclusively federal causes of action, Plaintiff asks this Court to dismiss his pending class action complaint without prejudice so that he and the class can press their claims in federal court.

2

10.     The putative class in the case pending before this Court will not be prejudiced by a dismissal without prejudice because its claims are now being pressed in an already-filed federal action alleging the same facts and expanding the avenues to potential relief.

11.     Defendants will not be prejudiced by a dismissal without prejudice because this litigation is in its nascent stages and Defendants have not even begun to respond to discovery requests. Marriott International, Inc. will find itself in essentially the same position in the federal action that it is in with respect to this case – needing to answer a newly-filed complaint.

12.     The legal and factual bases for why the Court should grant Plaintiff's motion are set forth in detail in the Memorandum of Law that is filed contemporaneously with this Motion.

WHEREFORE, Plaintiff respectfully requests that the Court grant his Renewed Motion to Voluntarily Dismiss Without Prejudice.

Respectfully submitted,

William H. Bode
Mark Leventhal
Andre Gregorian
Bode & Grenier, LLP
1150 Connecticut Ave. NW
Ninth Floor
Washington, D.C. 20036
(202) 828-4100

-and-

Steven A. Katz
Douglas Sprong
Michael Klenov
Korein Tillery LLC
505 N. 7th Street, Suite 3600
St. Louis, MO 63101
(314) 241-4844

*Attorneys for Plaintiffs*

3

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

ROBERT J. ENGLAND, )
Individually, and on behalf of all others )
similarly situated, )
)
     Plaintiff, )
) Civil Action No.: 316395-V
v. )
)
MARRIOTT INTERNATIONAL, INC., et al. )
)
     Defendants. )
_____ )

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S RENEWED MOTION TO VOLUNTARILY DISMISS WITHOUT PREJUDICE

### INTRODUCTION

Plaintiff wishes to press his claims and the claims of the class he seeks to represent in a court that has the power to hear *all of the claims* arising from this case or controversy – a United States District Court. Plaintiff and his counsel are legally and ethically obligated to bring in one action all of the claims that putative class members might have against Marriott International, Inc. that relate to Marriott's grant of Deferred Stock Bonus Certificates/Awards ("Certificates") to class members. Congress has relegated a number of the claims that would inure most heavily to the benefit of the class, if successfully prosecuted, to the exclusive jurisdiction of the federal courts. That is why Plaintiff has filed a federal class action complaint that added those exclusively federal claims on behalf of the same class.

This Court's duty in deciding whether to grant a voluntary dismissal of a class action complaint is two-fold: (1) to protect the interests of the putative class; and (2) to ensure that Defendants do not suffer a plain legal prejudice. The interests of the putative class are already well-protected by the federal class action that expands viable claims and increases the size of the

1

potential relief that the class is entitled to; the class can suffer no prejudice by a dismissal. Similarly, Marriott will either be forced to defend two cases simultaneously, or if this Court grants Plaintiff's motion to dismiss, it can focus its efforts on the defense of one federal action. Even if for some reason Marriott prefers to defend two cases instead of one, the fact that Marriott has not yet begun to respond to discovery requests means that Marriott will not suffer the plain legal prejudice necessary for this Court to deny Plaintiff's motion.

The multiple additional reasons Plaintiff offers for why this case should be dismissed without prejudice – primarily the predominance of federal issues and the notable absence of a strong Maryland interest in the resolution of this controversy – validate Plaintiff's decision to file his Second Amended Complaint as an original complaint in the federal courts. The fact that a prominent part of this controversy is within the exclusive jurisdiction of the federal courts means that this case will proceed in federal court. The only question, then, is whether Plaintiff will be forced to simultaneously prosecute, and Marriott to simultaneously defend, a redundant or alternative portion of the federal action in this Court.

## FACTUAL BACKGROUND

Plaintiff filed this action as an individual breach of contract claim on July 6, 2009, alleging that Marriott breached the terms of the Certificates it issued to Plaintiff during the course of his employment with Marriott. In the weeks that followed, Plaintiff's counsel became aware of other former Marriott employees who had received the same or materially identical Certificates from Marriott, and who potentially had the same claims against Marriott as did Plaintiff. Consequently, on September 4, 2009, Plaintiff filed an Amended Complaint alleging the same breach of contract theory, but this time on behalf of a class of all former Marriott employees who received Certificates. The Amended Complaint also added, for the first time,

2

Host Hotels & Resorts, Inc. ("Host") and Host Hotels & Resorts, L.P. ("Host L.P.") as

Defendants. Marriott, Host, and Host L.P. jointly answered the Amended Complaint on October

16, 2009.

While Plaintiff's Certificates referenced a Deferred Stock Bonus Plan (the "Marriott

Plan") and Marriott referenced a Plan Administrator in its communications with Plaintiff's

counsel – terms that evoked the potential applicability of the Employee Retirement Security Act

of 1974 (ERISA) – Plaintiff's counsel did not have sufficient information before filing the

Amended Complaint to assert causes of action under ERISA or to allege violations of ERISA on

behalf of the putative class. Primarily, because Plaintiff left Marriott's employ before the

enactment of ERISA, Plaintiff's counsel was uncertain whether ERISA applied to Plaintiff's

claim. But given the presence of ERISA-related issues in the class claims, prior to the parties'

first Scheduling Conference on November 12, 2009, Plaintiff's counsel associated with a law

firm specializing in class action ERISA litigation in order to fully investigate the ERISA aspects

of Plaintiff's claims.

At the parties' first Scheduling Conference, held just over two months ago, Plaintiff's

counsel represented to the Court that in light of several legal uncertainties surrounding the claims

of the class, Plaintiff would need to file a Second Amended Complaint with the Court's

permission. The Court granted Plaintiff leave to amend his complaint, and ordered that a Second

Amended Complaint be filed on January 11, 2010. The Court also encouraged Plaintiff's

counsel to name additional Plaintiffs and potential class representatives in the Second Amended

Complaint. The Court set the next Scheduling Conference, where the parties were to submit a

joint discovery plan, for January 22, 2010, just one week ago.

Immediately after the initial Scheduling Conference and in the process of its further investigation, Plaintiff's counsel undertook an extensive analysis of the ERISA implications of the class claims. A number of additional Certificate recipients came forward and agreed to be named plaintiffs in the Second Amended Complaint. Those additional plaintiffs received their Certificates after ERISA's enactment, and Plaintiff's counsel learned that Plaintiff and post-ERISA Certificate recipients were participants in the same Marriott Plan. Thus if ERISA governed the Marriott Plan, then even Plaintiff's pre-ERISA Certificates, which were held and managed by the Marriott Plan, would also be governed by ERISA.

Based largely on information and documentation obtained from class members and public records, Plaintiff's counsel concluded that the Marriott Plan that issued Certificates to Plaintiff and the class was an "employee pension benefit plan" under ERISA, 29 U.S.C. § 1002(2)(A), because the Plan was established to provide retirement income to employees, and the Certificates by their express terms systematically deferred income until the recipients' retirement. Further, Certificate recipients were not taxed at the time of their awards, and instead, income tax was deferred until the distribution of stock at retirement. As explained fully below, if ERISA in fact governs the Marriott Plan, Plaintiff and the class *cannot bring breach of contract claims* because they are completely preempted by ERISA's civil enforcement section, 29 U.S.C. § 1132. That section provides the exclusive remedy for any legal claim that relates to an "employee pension benefit plan," meaning the class must bring its claims, if at all, only under ERISA.

Counsel's investigation also revealed that throughout the existence of the Marriott Plan, Marriott did not treat it as a Plan governed by ERISA, and hence took no steps to ensure that the Plan complied with ERISA's myriad substantive provisions. Consequently, Plaintiff's counsel

4

concluded that the Plan violated ERISA's disclosure and reporting requirements of 29 U.S.C. §
1021 *et seq.*, minimum vesting requirements and years of service formulas established by 29
U.S.C. § 1053(a) and (b), and the nonforfeitability requirement of 29 U.S.C. § 1053(a). These
violations, if established, have critical implications for the claims of class members because they
would potentially entitle Certificate recipients to more stock than what is owed under the terms
listed on the Certificates. And it was Plaintiff's and his counsel's legal and ethical duty, as
putative class representative and class counsel, to bring all claims arising from the same
transaction or occurrence on behalf of the class.

  The problem faced by Plaintiff and his counsel, however, was that ERISA's civil
enforcement section relegates all claims alleging substantive violations of ERISA to the
exclusive jurisdiction of the federal courts. Faced with the conflicting obligation of having to
bring claims within the exclusive jurisdiction of the federal courts on behalf of the class, and
having to comply with this Court's order to file a Second Amended Complaint on January 11,
2010, Plaintiff's counsel sought an extension of time to file the Second Amended Complaint to
January 19, 2010. Defendants consented to Plaintiff's request for an extension, and in exchange,
Plaintiff's counsel agreed to provide Defendants a working copy of the Second Amended
Complaint on the originally scheduled date of January 11, 2010.

  Consistent with the parties' agreement, Plaintiff's counsel delivered to Defense counsel a
copy of the Second Amended Complaint by email on the afternoon of January 11, 2010. In that
email, Plaintiff's counsel expressly stated that "we do not believe the state court will
have jurisdiction to hear some of the Federal claims asserted." (Exhibit 1). In fact, even prior to
that email, Plaintiff's counsel expressed to Defense counsel by telephone their position that they
were legally and ethically obligated to bring the ERISA claims on behalf of the class, and that

some of those ERISA claims were within exclusively federal jurisdiction. Plaintiff's counsel ended the email by stating that "I would like to discuss the impact of this with you all in more detail." (Exhibit 1). Defense counsel did not respond to that email prior to the deadline for filing the Second Amended Complaint.

Facing the January 19 deadline, needing to file ERISA claims within exclusively federal jurisdiction, and hearing nothing from Defendants, Plaintiff's counsel chose to file a Motion to Dismiss Without Prejudice instead of filing a Second Amended Complaint stating claims over which this Court had no jurisdiction. To protect the interests of Plaintiff and the class, Plaintiff's counsel also filed on the same day a Class Action Complaint in the United States District Court for the District of Columbia, stating claims under ERISA's civil enforcement section, claiming substantive violations of ERISA that are within exclusively federal jurisdiction, and stating, in the alternative, breach of contract claims that are within federal jurisdiction by virtue of the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1332(d). (Exhibit 2). The federal complaint added three new named plaintiffs, dropped Host and Host L.P. as defendants, and also named the Marriott International, Inc. Stock and Cash Incentive Plan (the successor to the Marriott Plan) as a defendant, as ERISA requires.

Plaintiffs chose the District of Columbia venue based on three principal considerations. First, the Certificates of Plaintiff and the other named plaintiffs in the federal action all referenced a Deferred Stock Bonus Plan or a Deferred Stock Administrator with a Washington, D.C. address, and required the Certificate recipients to execute and deliver a duplicate copy of the Certificate to a Washington, D.C. address. (Exhibit 3). Second, when Plaintiff inquired into his eligibility for benefits under his Certificates, he received a reply from Marriott International, Inc. on Corporate Headquarters letterhead with a Washington, D.C. address. Subsequently,

6

Plaintiff's counsel sent and received communications regarding Plaintiff's Certificates to and from that same Washington, D.C. address. (Exhibit 4). Third, while Plaintiff's counsel was unable to locate contact information for the Administrator of the Defendant Plan in the federal action, they learned that all of Marriott's other employee benefit plan administrators were registered with the Internal Revenue Service and the Department of Labor at the same Washington, D.C. address from which Plaintiff and his counsel received communications about his Certificates. (Exhibit 5). With the ERISA venue statute, 29 U.S.C. § 1132(e)(2), providing for venue in the judicial district where a defendant Plan is administered, Plaintiff's counsel filed in the district where all relevant information and documents were likely to be available, namely where the defendant Plan is administered.

## ARGUMENT

## I.    Dismissal of This Action Would Not Prejudice the Putative Class Because the Parallel Federal Class Action Protects the Rights and Interests of All Class Members

On a typical motion to dismiss without prejudice after a Defendant has answered, this Court would face only the question of whether the dismissal would result in a "plain legal prejudice" to the Defendant. *See Aventis Pasteur, Inc. v. Skevofilax,* 396 Md. 405, 419 (Md. 2007). But because Plaintiff filed a class action complaint in this case, the Court must also consider and protect the interests of the putative class. Md. Rule 2-231(h) provides that a "class action shall not be dismissed or compromised without the approval of the court," and grants courts the power to direct "[n]otice of a proposed dismissal or compromise . . . to all members of the class." Maryland courts have not had occasion to interpret that section of Rule 2-231 or to propound standards courts should use to evaluate the potential prejudice to the class, or the need for class notice of dismissal. But because Md. Rule 2-231 is based on Fed. R. Civ. P. 23 and

7

Maryland courts look to federal decisions interpreting the federal rule for guidance, the federal approach to dismissals of class actions is instructive. *See Philip Morris USA, Inc. v. Christensen,* 394 Md. 227, 253-54 (Md. 2006).

The federal decisions addressing voluntary dismissal of class actions primarily focus on three possible scenarios that could harm the interests of putative class members. First, federal courts are concerned with collusive settlements between the named plaintiff and the defendant through which the named plaintiff extracts a premium settlement and either settles the claims of the class below value, or dismisses class claims altogether. *Andenberg v. Masonite Corp.,* 176 F.R.D. 682, 688 (N.D. Ga. 1997). Second, federal courts look to see whether a dismissal of a class action could result in a loss of putative class members' rights due to the running of the statute of limitations. *See Cranley v. Nat'l Life Ins. Co. of Vermont,* 144 F. Supp. 2d 291, 305 (D. Vt. 2001). A third and related issue that federal courts look at is whether class members have been lulled into inaction by being informed that their interests are being represented in a class action, and whether a dismissal of that class action would be unfair in light of that expectation. *See Shinsato ex rel. Shinsato v. Abbott Labs.,* No. C-02-1015 MMC, 2003 WL 22114265, *1 (N.D. Cal. Sept. 5, 2003). In situations where voluntary dismissals present these risks to members of the putative class, courts generally direct notice to the class to apprise them of their rights.

Plaintiff's request for a voluntary dismissal presents none of these risks. First, Plaintiff has not settled his claim against Defendants and has not attempted to settle any claims on behalf of the class, so there is absolutely no threat of a collusive compromise. Second, Plaintiff has filed a federal class action that expands viable remedies and tolls the statutes of limitations of all class members. *See Am. Pipe & Constr. Co. v. Utah,* 414 U.S. 538 (1974); *Crown, Cork & Seal*

8

*Co., Inc. v. Parker,* 462 U.S. 345 (1983). As a result, a dismissal in this case would not expose any class members to a risk of losing their claims against Marriott. Finally, the fact that class members have not received notice of this class action, but more importantly because another federal class action has already been filed on their behalf, there is no risk that class members have been lulled into inaction by the class claims in this case that could lead them to sleep on their rights. Consequently, notice to class members of a dismissal of this case would amount to a meaningless notice of a procedural alteration in the class litigation that poses no threat to the substantive rights of the class.

In fact, federal courts faced with motions to voluntarily dismiss a class action complaint under circumstances similar to those in this case have granted dismissal without prejudice, and have not directed notice to the class. *See, e.g. Tyco Labs, Inc. v. Koppers Co., Inc.,* 82 F.R.D. 466 (D. Wis. 1979), *aff'd* 627 F.2d 54 (7th Cir. 1980). In *Tyco,* plaintiffs sought to voluntarily dismiss their federal class action so that they could proceed instead with a state class action based on the same theories. *Id.* at 468. The primary reason for their desire to proceed in state rather than federal court, was the fact that the federal court did not have subject matter jurisdiction over the claims of class members that were below the minimum amount in controversy requirement. *Id.* The court granted the plaintiffs' motion and rejected defendant's argument that it would "suffer legal prejudice because it will be deprived of the present advantage of the limited jurisdiction of the federal court to diversity claims that exceed $10,000." *Id.* at 469. The court also did not direct notice to the class because of its belief that the class would not suffer any prejudice since its claims would be pressed in the state class action. *Id.*

Similarly, the Plaintiff here seeks to voluntarily dismiss his class action from a court with limited subject matter jurisdiction, in order to press the claims of the class in an already-filed

class action in a court that possesses the full extent of subject matter jurisdiction over this controversy. And like the *Tyco* class, the class of Certificate recipients in this case cannot be prejudiced by a voluntary dismissal in this Court, hence this Court need not direct notice to class members in conjunction with dismissal. *See also Andenberg,* 176 F.R.D. at 688-90 (granting voluntary dismissal of class claims and not directing notice to the class because class members would suffer no prejudice from dismissal); *Smith v. Lenches,* 263 F.3d 972 (9th Cir. 2001) (granting voluntary dismissal of plaintiffs' federal class action and holding that plaintiffs were entitled to abandon federal action after deciding that state litigation was preferable for class interests).

## II. Voluntary Dismissal of This Action Will Not Result in Plain Legal Prejudice to Defendants Because Marriott Has Not Begun Responding to Discovery Requests, and Marriott Would Be Left Defending One Action Rather Than Two

When a voluntary dismissal does not create a risk of prejudice to the class, as is the case here, the Court must evaluate the Plaintiff's request for dismissal as one under Md. Rule 2-506(b). The Maryland Court of Appeals has explained that "[c]ourts will generally grant a motion for voluntary dismissal unless the defendant(s) will suffer some 'plain legal prejudice' if the dismissal is granted." *Skevofilax,* 396 Md. at 419. To determine whether the Defendants in this case will suffer a "plain legal prejudice," the Court must look to the following four factors: "(1) the non-moving party's effort and expense in preparing for litigation; (2) excessive delay or lack of diligence on the part of the moving party; (3) sufficiency of explanation of the need for a dismissal without prejudice; and (4) the present stage of the litigation, i.e. whether a motion for summary judgment or other dispositive motion is pending." *Id.* at 420.

To date, the extent of the Defendants' effort and expense in preparing for litigation has consisted of answering Plaintiff's Amended Complaint, and appearing at two Scheduling

10

Conferences before this Court, the second of which took place *after* Plaintiff filed his initial Motion to Dismiss. Plaintiff's Second Amended Complaint was due only ten days ago, a date which the Defendants and the Court approved. While Plaintiff propounded Interrogatories and Requests for Production on December 21, 2009, just over a month ago, Plaintiffs did so out of an abundance of caution and with the understanding that Defendants would need to see the Second Amended Complaint before responding. (Exhibit 6). Defendants have not responded to date. Furthermore, Plaintiff's discovery requests explicitly raised the issue of ERISA's applicability, and Plaintiff expects to serve Marriott with materially identical discovery requests in the federal case. So to the extent that Marriott has expended effort preparing to respond to Plaintiff's discovery requests, that effort will not go to waste and can be channeled to the discovery process in the federal case.

Plaintiff has been diligent in investigating and prosecuting this action, and has not delayed these proceedings to the detriment or expense of the Defendants. The only possible act of delay that Defendants can point to is Plaintiff's failure to file a Second Amended Complaint ten days ago. But as explained throughout this Memorandum, Plaintiff chose to file a Motion to Dismiss instead of a Second Amended Complaint based on his belief that ERISA governs this action, based on his legal duty to assert all viable claims on behalf of the class, and based on his knowledge that the majority of the class's ERISA claims can only be brought in federal court. Finally, there is no dispositive motion pending and the Plaintiff is not seeking to escape any adverse ruling by the Court in this matter.

The fact of the nascent stage of this litigation, standing alone, is enough to find that Defendants will suffer no "plain legal prejudice" from a dismissal. Defendants Host and Host L.P. will certainly not be prejudiced, as both Plaintiff and the class have no claims against them,

11

and they have not been named as defendants in the federal action. The only Defendant that could possibly be prejudiced by a voluntary dismissal without prejudice is Marriott, but the Court's decision to deny Plaintiff's motion would force Marriott to defend two cases instead of one, when Marriott finds itself in an essentially identical position in the federal case as it finds itself here – needing to answer a newly filed complaint. Furthermore, Plaintiff could find no Maryland cases where a court has ever questioned, disapproved, or refused to grant a voluntary dismissal without prejudice in a case where a Defendant had not yet responded to discovery requests. *Contrast Skevofilax,* 396 Md. 405 (denial of dismissal without prejudice was within the court's discretion because of a pending motion for summary judgment toward the close of discovery); *Edwards v. Demedis,* 118 Md. App. 541 (Md. Ct. Spec. App. 1997) (denial of dismissal without prejudice was within the court's discretion because motion to dismiss was filed a month before the trial date).

The early stage of this litigation notwithstanding, there are a number of other reasons why the Court should dismiss Plaintiff's complaint without prejudice. The most compelling reasons have to do with the applicability of ERISA, the predominance of issues within exclusively federal control and the concomitant absence of Maryland issues from this controversy, and finally the great potential for squandering this Court's time and resources by presiding over a duplicative portion of a federal case without the power to effectively and conclusively resolve this entire controversy.

A.    *If ERISA Applies, Plaintiff and the Class Must Bring Their Claims Under ERISA, and This Court Will Be Left to Apply Federal, Rather than Maryland Law*

ERISA is a comprehensive federal scheme that "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a). The Supreme Court has explained that ERISA's preemptive scope is so broad, that it

12

provides the exclusive remedy for any alleged misconduct that in any way relates to an employee benefit plan. *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 53-56 (1987); *Eid v. Duke,* 373 Md. 2, 12 (Md. 2003). This broad preemptive scope has two implications for claims brought under state law against employee benefit plans. First, to the extent that state law seeks to provide a remedy that is inconsistent with the civil enforcement provision of ERISA, ERISA expressly preempts the state law claim and that claim must be dismissed. *Dedeaux,* 481 U.S. at 45-48; *Eid,* 373 Md. at 12-13. Second, to the extent that state law seeks to provide a remedy that is consistent with the civil enforcement provision of ERISA, ERISA completely preempts the state law claim and converts it to a federal claim under 29 U.S.C. § 1132. *Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 65-66 (1987).

There are three essential requirements for complete preemption: (1) the plaintiff must have standing under § 1132 to pursue a claim; (2) the claim must be within the scope of a remedy provided by § 1132; and (3) the claim must involve the interpretation of an ERISA-governed benefit plan. *Sonoco Prods. Co. v. Physicians Health Plan, Inc.,* 338 F.3d 366, 372 (4th Cir. 2003). The state law breach of contract claims that Plaintiff brought on behalf of former Marriott employees who received Certificates meet all three of these requirements, and so are completely preempted and converted into a federal cause of action under § 1132(a).

First, both Plaintiff and class members have standing to pursue a claim under § 1132(a)(1) and (3) because they are participants in an employee benefit plan. Those sections explicitly name plan participants as persons empowered to bring a civil action under ERISA. ERISA defines a "participant" as "any employee . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. § 1002(7). Plaintiff brought the Amended Complaint on behalf of former Marriott employees "who are eligible, or who will

13

become eligible, for compensation under [their] Certificates by virtue of turning 65 years of age, taking early retirement, becoming permanently disabled, or dying." Am. Compl. ¶ 11. The members of the putative class fit squarely within the definition of "participants" under ERISA, so they meet the first requirement for complete preemption.

Second, the breach of contract claims in the Amended Complaint are well within the scope of the remedies provided by § 1132. In those breach of contract claims, Plaintiff and class members sought benefits under the terms of their Certificates which spelled out the terms of the Marriott Plan. ERISA § 1132(a)(1)(B) allows a participant "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Plaintiff's breach of contract claims are clearly within the scope of the § 1132(a)(1)(B) claim for benefits under the terms of the plan.

The additional claims in the federal complaint, which Plaintiff would have filed as his Second Amended Complaint in this Court but for his Motion to Dismiss, are clearly within the scope of the remedies provided by ERISA because they explicitly seek remedies provided by ERISA. Specifically, those additional claims sought a declaration that the terms of the Certificates, and hence the terms of the Marriott Plan, violate ERISA's minimum vesting requirements, years of service requirements, and nonforfeitability requirement set forth in 29 U.S.C. § 1053. Plaintiffs sought to enforce those ERISA substantive requirements by having ERISA-compliant terms replace the illegal terms in their Certificates. ERISA § 1132(a)(3) allows participants to "enjoin any act or practice which violates any provision of [ERISA] or . . . to enforce any provisions of [ERISA] . . . ." 29 U.S.C. § 1132(a)(3).

14

Finally, if the Marriott Plan is governed by ERISA, then the resolution of the claims brought in the Amended Complaint and the claims that would have been brought in the Second Amended Complaint would require the interpretation of an ERISA-governed benefit plan. Plaintiff's position is that the Marriott Plan that issued Certificates to Plaintiff and the class was an ERISA-governed "employee pension benefit plan" as defined by 29 U.S.C. § 1002(2)(A), because the Plan was established to provide retirement income to employees, and the Certificates by their express terms systematically deferred income until the recipients' retirement. Further, the Certificates possessed a unique feature common to pension plans, the deferral of taxation until distribution at retirement.

The bottom line of this analysis is that if the Marriott Plan is an ERISA-governed "employee pension benefit plan," as Plaintiff and the putative class now contend it is, then the breach of contract claims asserted in the Amended Complaint are not breach of contract claims at all, but are instead a claim for benefits under 29 U.S.C. § 1132(a)(1)(B). In other words, the doctrine of complete preemption "converts an ordinary state common law complaint into one stating a federal claim." *Taylor,* 481 U.S. at 65. Indeed, the case law unequivocally treats breach of contract claims brought against ERISA plans as federal claims for benefits under § 1132(a)(1)(B), with some courts allowing plaintiffs leave to amend their complaint to state a § 1132(a)(1)(B) claim, and others simply ignoring the breach of contract label and treating the claim as one for benefits under § 1132(a)(1)(B). *See, e.g., Darcangelo v. Verizon Commc'ns, Inc.,* 292 F.3d 181, 194-95 (4th Cir. 2002); *Miller v. U.S. Foodserv., Inc.,* 323 F. Supp. 2d 665 (D. Md. 2004); *Ankney v. Metro. Life Ins.,* 438 F. Supp. 2d 566 (D. Md. 2006); *Nadworny v. Shaw's Supermarkets, Inc.,* 405 F. Supp. 2d 124 (D. Mass. 2005).

B.      *If ERISA Applies, This Court Would Only Have Jurisdiction Over Some of the*
        *ERISA Claims Plaintiff Had a Legal and Ethical Duty to Bring*

Even though Plaintiff's Amended Complaint may state a federal claim for benefits under

ERISA § 1132(a)(1)(B), despite the breach of contract label, this Court nevertheless has subject

matter jurisdiction over that claim. ERISA's civil enforcement jurisdiction subsection provides

that "State courts of competent jurisdiction and district courts of the United States shall have

concurrent jurisdiction of actions under paragraphs (1)(B) . . . of subsection (a) of this section."

29 U.S.C. § 1132(e)(1). But the Second Amended Complaint that the Court ordered Plaintiff to

file would have contained more than mere claims for benefits "under the terms of his plan,"

which is all that § 1132(a)(1)(B) authorizes.

In the federal complaint that Plaintiff would have filed as his Second Amended

Complaint but for his Motion to Dismiss, he and additional named plaintiffs sought to enforce

the substantive provisions of ERISA, including its minimum vesting requirements, its years of

service requirements, and its nonforfeitability requirements outlined in 29 U.S.C. § 1053(a) and

(b). Since those claims arise under § 1132(a)(3), which allows participants "enjoin any act or

practice which violates any provision of [ERISA] or . . . to enforce any provisions of [ERISA],"

ERISA grants the federal courts exclusive jurisdiction to hear and adjudicate those claims.

*Admin. Comm. V. Gauf,* 188 F.3d 767, 770 (7th Cir. 1999).

This jurisdictional allocation is consistent with Congress's purpose in enacting ERISA in

the first place – namely to develop a "uniform body of benefits law . . . [in order to] minimize the

administrative and financial burden of complying with conflicting directives among States or

between State and the Federal Government." *Ingersoll-Rand Co. v. McClendon,* 498 U.S. 133,

142 (1990). *See also Shofer v. Stuart Hack Co.,* 324 Md. 92, 113 (Md. 1991) ("This conferral of

exclusive subject matter jurisdiction on the federal courts seems clearly to be part of the

16

congressional intent to have a nationally uniform standard of care applied to ERISA fiduciaries."). State courts were given concurrent jurisdiction over § 1132(a)(1)(B) claims because "[a]ctions to recover benefits or enforce rights under the terms of the plan will typically involve the application of those general principles of contract law with which the state courts have had substantial experience before ERISA; their expertise qualifies them to evaluate these rules in the light of ERISA's policies and apply federal common law." *Menhorn v. Firestone Tire & Rubber Co.,* 738 F.2d 1496, 1500 n.2 (9th Cir. 1984). In other words, § 1132(a)(1)(B) claims "would not involve the application or interpretation of any of the ERISA requirements or a determination of whether ERISA applied." *Fraver v. N. Carolina Farm Bureau Mut. Ins. Co.,* 643 F. Supp. 633, 643 (E.D.N.C. 1985), *rev'd on other grounds*, 801 F.2d 675 (4th Cir. 1986).

By contrast, "were a participant to come into Court and allege that a particular plan does not meet the minimum vesting requirements of ERISA, then that would be an action 'to enforce or clarify benefit rights provided under Title I [of ERISA].'" *Id.* (quoting Conference Committee Report, Section 502). "This type of action *would have to be brought in the Federal Court*." *Id.* (emphasis added). *Id.* A plaintiff cannot create state court jurisdiction by artfully reframing a substantive ERISA violation as a simple claim for benefits under § 1132(a)(1)(B); where the resolution of the plaintiff's claim requires the interpretation or construction of the ERISA statute, the state court has no jurisdiction over that claim. *See Guthrie v. Dow Chem. Co.,* 445 F. Supp. 311, 313-14 (S.D. Tex. 1978). *See also Shofer,* 324 Md. at 113 (rejecting plaintiff's attempt to characterize his breach of fiduciary duty claim as one for benefits under § 1132(a)(1)(B) by claiming that the duty arises from the plan language).

In this case, Plaintiff was faced with the prospect of filing a Second Amended Complaint stating both claims for benefits "under the terms of the plan," over which the Court has subject

17

matter jurisdiction, and numerous claims for violations of ERISA's substantive provisions, claims within the exclusive jurisdiction of the federal courts. Instead of filing a clearly deficient complaint with this Court, Plaintiff filed his complaint in a court that had subject matter jurisdiction over all of the Plaintiff's and class members' claims, consistent with his legal and ethical obligation to the putative class he seeks to represent. As a consequence of that filing, and in consideration of this Court's time and the Defendants' resources, Plaintiff asked this Court to dismiss his Amended Complaint without prejudice so his claims and the claims of the class could proceed in one action in federal court.

C.    *If Plaintiff is Forced to Split his ERISA Claims between State and Federal Courts, this Court Would Waste Limited Judicial Resources Because It Could Not Conclusively Resolve the Entire Case or Controversy*

If this Court denies Plaintiff's Motion to Dismiss and if, as Plaintiff believes, ERISA completely preempts his breach of contract claims and converts them into § 1132(a)(1)(B) claims for benefits, Plaintiff would be left in the awkward position of splitting his ERISA claims between state and federal court. Plaintiff is unaware of any court in the country that has allowed a plaintiff to simultaneously split ERISA claims between state and federal courts. In fact, not only would such claim-splitting by an ERISA plaintiff be illogical and legally infirm, but it would also evince a disregard for both the Defendants and the limited resources of the Maryland and federal court systems.

As an general matter, the courts of this State frown upon claim-splitting and explain that "a single cause of action or an entire claim cannot be split up or divided and separate suits maintained for the various parts thereof." *Jones v. Speed,* 320 Md. 249, 257 (Md. 1990). Similarly, federal courts "deprecate[] the practice of filing two suits over one injury-often with an argument based on state law presented to a state court, and an argument arising under federal

18

law presented to a federal court." *Rogers v. Desiderio,* 58 F.3d 299, 300 (7th Cir. 1995). The rule prohibiting claim-splitting "is intended to prevent a multiplicity of litigation and to avoid the vexation, costs and expenses incident to more than one suit on the same cause of action." *Jones,* 320 Md. at 258. To prevent this waste of both the litigants' and judicial resources, both Maryland and the federal system adopt the rule that a party who has asserted a right to relief arising out of a particular transaction or occurrence must join all claims he has arising from it, or the omitted claims will be barred by *res judicata* with a final judgment in the first case. *See, e.g., Colandrea v. Wilde Lake Cmty. Ass'n, Inc.*, 761 A.2d 899, 910 (Md. 2000).

However, both Maryland and the federal courts also recognize an exception to the *res judicata* rule in situations where the party could not have brought a claim in a particular court because the court did not have subject matter jurisdiction over the claim. *Colandrea,* 761 A.2d at 910 (noting that the *res judicata* bar applies only to "*matters that could have been litigated in the original suit*"); *Marrese v. Am. Acad. of Orthopaedic Surgeons,* 470 U.S. 373, 382 (1985) (explaining that "claim preclusion generally does not apply where 'the plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy because of the limitations on the subject matter jurisdiction of the court'") (citation omitted). The Restatement (Second) of Judgments, on which both Maryland and federal courts rely to determine the preclusive effect of judgments, is in accord:

> A given transaction may result in possible liability under the law of one state and alternatively under a federal statute enforceable exclusively in a federal court. When the plaintiff brings an action in the state court, and judgment is rendered for the defendant, the plaintiff is not barred from an action in the federal court in which he may press his claim against the same defendant under the federal statute.

Restatement (Second) of Judgments § 26. While it is true that if the Plaintiff's breach of contract claims are completely preempted, they would turn into federal claims under § 1132(a)(1)(B)

19

instead of state law claims as referenced in the rule, the rule is nevertheless equally applicable because this Court has jurisdiction over the § 1132(a)(1)(B) claims, but not the exclusively federal claims alleging violations of ERISA § 1053.

Federal courts deciding the preclusive effect of prior state court judgments arising out of the same transaction or occurrence have been steadfast in their application of this exception to the *res judicata* bar.  For example, one district court refused to apply *res judicata* to a plaintiff's ERISA claims that fell within exclusively federal jurisdiction, even though there had been a state judgment arising out of the same transaction, precisely because the ERISA claim "could not have been raised before the state court." *Admin. Comm. v. Alexander,* 161 F. Supp. 2d 870, 873 (N.D. Ill. 2001).  *Accord Spitz v. Tepfer,* 171 F.3d 443 (7th Cir. 1999).  The Eleventh Circuit refused to apply the *res judicata* bar to a plaintiff's federal antitrust claims falling within exclusive federal jurisdiction, even though plaintiff had brought and lost state antitrust claims against the same defendant. *See Aquatherm Inds., Inc. v. Florida Power & Light Co.,* 84 F.3d 1388 (11th Cir. 1996).  *See also Kurek v. Pleasure Driveway and Park Dist. of Peoria, Ill.,* 583 F.2d 378 (7th Cir. 1978).  Similarly, the Ninth Circuit refused to apply the *res judicata* bar to a plaintiff's Title VII discrimination claims that fell within exclusive federal jurisdiction, even after plaintiff had unsuccessfully challenged her termination in a state proceeding. *See Hirst v. State of Cal.,* 770 F.2d 776 (9th Cir. 1985).

Normally, parallel state and federal proceedings arising out of the same transaction or occurrence result in a great waste of judicial resources because as soon as one court enters a final judgment in its case, that judgment has *res judicata* effect in the other case. *See Roane v. Washington Co. Hosp.,* 137 Md. App. 582, 588-89 (Md. Ct. Spec. App. 2001).  Here, any judgment by this Court in this case cannot have preclusive effect on the ERISA claims within the

exclusive jurisdiction of the federal court in Plaintiff's federal case. By contrast, any judgment in Plaintiff's federal case would have preclusive effect in this Court because the federal court has subject matter jurisdiction to hear every part of Plaintiff's and the class's case or controversy. So the only judicial resources that will potentially go to waste in this case are those of this Court. In addition, Defendant Marriott will be forced to incur significant expense defending essentially the same action in two courts, even though Plaintiff and the class wish to prosecute all of their claims in the one forum that has jurisdiction to hear all of their claims.

## CONCLUSION

With the knowledge that a federal action will proceed no matter which way the Court rules on Plaintiff's Renewed Motion to Voluntarily Dismiss Without Prejudice, this Court must decide whether to force Plaintiff to prosecute, and force Marriott to defend, a smaller redundant portion of this controversy in Montgomery County. Further, the Court must note the fact that even if it reaches a decision on the merits in Plaintiff's case, the Court will not end Plaintiff's controversy with Marriott because the Court does not have the power to bind Plaintiff on his ERISA claims that fall within exclusively federal jurisdiction. At the same time, the Court risks that any judicial resources it invests in the resolution of this case could be wasted by the entry of a judgment in the federal court, which does have the full power to effectively end this entire controversy. Given the nascent stage of this litigation, the fact that Defendants have not begun to respond to discovery requests and no dispositive motions have been filed, and the fact that a dismissal would prejudice neither the putative class nor any of the Defendants, Plaintiff respectfully requests that this Court grant his Motion to and allow this case to proceed in its proper federal forum.

21

Respectfully submitted,

William H. Bode
Mark Leventhal
Andre Gregorian
Bode & Grenier, LLP
1150 Connecticut Ave. NW
Ninth Floor
Washington, D.C. 20036
(202) 828-4100

-and-

Steven A. Katz
Douglas Sprong
Michael Klenov
Korein Tillery LLC
505 N. 7th Street, Suite 3600
St. Louis, MO 63101
(314) 241-4844

*Attorneys for Plaintiffs*

22

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of January, 2010, I caused a true and accurate copy of the foregoing Plaintiff's Renewed Motion to Voluntarily Dismiss Without Prejudice, Memorandum of Law in support thereof, Exhibits, and Proposed Order to be served via first-class mail, postage prepaid, and e-mail upon:

Paul T. Glasgow
Kristin M. Koger
Venable LLP
One Church Street, 5th Floor
Rockville, MD  20850

*Attorneys for Defendants*
*Marriott International, Inc.,*
*Host Hotels & Resorts, Inc., and*
*Host Hotels & Resorts, L.P.*

Andre M. Gregorian